IN THE UNITED STATES DISTRICT CORT
FOR THE NORTHERN DISTRICT OF TEXAS,
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| Highland Capital | § | Case No. 19-34054-sgj11 |
| Management, L.P., | § | |
| | § | |
| Reorganized Debtor | § | |
| | § | |
| Patrick Daugherty, | § | |
| | § | |
| Appellant, | § | |
| | § | |
| v. | § | Civil Action No. 3:25-CV-2584-E |
| | § | |
| Highland Capital | § | |
| Management, L.P. et al., | § | |
| | § | |
| Appellees. | § | |

## APPELLANT'S BRIEF

Jason S. Brookner
State Bar No. 24033684
Andrew K. York
State Bar No. 24051554
William N. Drabble
State Bar No. 24074154
Joshua D. Smeltzer
State Bar No. 24113859
Drake M. Rayshell
State Bar No. 24118507

**Gray Reed & McGraw LLP**
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile:  (214) 953-1332
Email: jbrookner@grayreed.com
Email: dyork@grayreed.com
Email: jsmeltzer@grayreed.com
Email: wdrabble@grayreed.com
Email: drayshell@grayreed.com

*Counsel for Appellant*

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................ii

TABLE OF AUTHORITIES ...........................................................iv

STATEMENT OF JURISDICTION .............................................1

ISSUE PRESENTED ......................................................................3

STATEMENT OF THE CASE ........................................................4

    I.    Highland's Bankruptcy................................................4

    II.   Daugherty's Claims ....................................................4

    III.  Confirmation of the Plan ...........................................6

    IV.  The Settlement Agreement .......................................7

    V.   The Settlement Order................................................8

    IV.  Highland's Motion for Relief from the Settlement
        Order ..........................................................................9

    V.   The Bankruptcy Court's Modification of the
        Settlement Order and Settlement Agreement. ..........11

SUMMARY OF THE ARGUMENT ..........................................12

STANDARD OF REVIEW............................................................14

ARGUMENT ................................................................................15

    I.    The "Sanctity of Settlements Can Hardly Be
        Overemphasized." ......................................................15

    II.   Modifying the Settlement Order and Agreement
        Under Rule 60(b) Was an Abuse of Discretion............17

A.   Highland's Motion Was Cognizable Under Rule
      60(b)(1) and, Thus, Time-Barred. ...........................................19

B.   Alternatively, Highland's Calculated and Deliberate
      Choices Are Not Extraordinary Circumstances
      Warranting Relief Under Rule 60(b)(6). .................................22

CONCLUSION ......................................................................................25

CERTIFICATE OF COMPLIANCE........................................................28

CERTIFICATE OF SERVICE.................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Ackermann v. United States,*
340 U.S. 193 (1950)................................................................23

*Adam v. Itech Oil Co. (In re Gibraltar Res., Inc.),*
210 F.3d 573 (5th Cir. 2000)...................................... 2, 16, 17

*Banister v. Davis,*
590 U.S. 504 (2020)..............................................................2

*BLOM Bank SAL v. Honickman,*
605 U.S. 204 (2025)....................................................... *passim*

*Bradlees Stores, Inc. v. St. Paul Fire & Marine Ins. Co.*
(*In re Bradlees Stores, Inc.*),
291 B.R. 307 (S.D.N.Y. 2003) ...........................................17

*Browder v. Dir., Dep't of Corrs. of Ill.,*
434 U.S. 257 (1978)..............................................................2

*Faragalla v. Access Receivable Mgmt. (In re Faragalla),*
422 F.3d 1208 (10th Cir. 2005)............................................1

*First Nat'l Bank v. Crescent Elec. Supply Co.*
(*In re Renaissance Hosp. Grand Prairie, Inc.*),
713 F.3d 285 (5th Cir. 2013)..............................................14

*Garden Suburbs Golf & Country Club v. Murrell,*
180 F.2d 435 (5th Cir. 1950)..............................................25

*Hesling v. CSX Transp., Inc.,*
396 F.3d 632 (5th Cir. 2005)....................................... 14, 15

*Ins. Concepts, Inc. v. W. Life Ins. Co.,*
639 F.2d 1108 (5th Cir. 1981)............................................15

*In re Johns,*
    667 B.R. 322 (N.D. Tex. 2025) ........................................... 15

*Kemp v. United States,*
    596 U.S. 528 (2022) ............................................... 20, 21, 22

*Klapprott v. United States,*
    335 U.S. 601 (1949) ............................................................ 19

*Lehman Bros. Holdings, Inc. v. Kee,*
    268 A.3d 178 (Del. 2021) ................................................... 20

*Nat'l City Golf Fin. v. Scott,*
    899 F.3d 412 (5th Cir. 2018) ............................................. 23

*In re Oakhurst Lodge, Inc.,*
    582 B.R. 784 (Bankr. E.D. Cal. 2018) ............................... 21

*Official Comm. of Unsecured Creditors v. Cajun Elec. Power*
    *Coop, Inc. (In re Cajun Elec. Power Coop, Inc.),*
    119 F.3d 349 (5th Cir. 1997) ............................................. 16

*Presidio Enters., Inc. v. Warner Bros. Distrib. Co.,*
    784 F.2d 674 (5th Cir. 1986) ............................................. 21

*Protective Comm. for Indep. Stockholders of TMT Trailer*
    *Ferry, Inc. v. Anderson,* 390 U.S. 414 (1968) ................ 16, 26

*Rive v. Briggs of Cancun, Inc.,*
    82 F. App'x 359 (5th Cir. 2003) ........................................ 17

*United States v. Sterling Consulting Corp.*
    *(In re Indian Motorcycle Co.),*
    289 B.R. 269 (B.A.P. 1st Cir. 2003) ................................. 17

*Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co.,*
    121 F.3d 1332 (9th Cir. 1997) ........................................... 25

**Statutes**

11 U.S.C. § 502 ...................................................................... 9

11 U.S.C. § 510 ................................................................................ 9

28 U.S.C. § 158 ............................................................................ 1, 2

28 U.S.C. § 1334 ............................................................................ 1

## Other Authorities

11 Charles Alan Wright, Arthur R. Miller & Mary Kay
    Kane, *Federal Practice and Procedure* § 2858
    (Westlaw Sept. 2025 Update) ............................................ 20

Fed. R. Bankr. P. 7012 .............................................................. 10

Fed. R. Bankr. P. 8002 ................................................................ 1

Fed. R. Bankr. P. 9006 .............................................................. 22

Fed. R. Bankr. P. 9019 .............................................................. 16

Fed. R. Bankr. P. 9024 ......................................................... 17, 22

Fed. R. Civ. P. 6 ......................................................................... 22

Fed. R. Civ. P. 60 ................................................................ *passim*

12 James Wm. Moore et al., *Moore's Federal Practice* ¶
    60.48[3][b] (3d ed. 2025) ................................................ 24

Leif M. Clark, *Symposium Survey: Bankruptcy*,
    28 Tex. Tech L. Rev. 299 (1997) ...................................... 16

## STATEMENT OF JURISDICTION

The bankruptcy court had subject-matter jurisdiction to enter the order from which Appellant appeals, because the modification of an order approving a compromise or settlement with the reorganized debtor is a proceeding "arising in . . . cases under title 11." 28 U.S.C. § 1334(b).

The bankruptcy court entered its "Order (A) Denying Patrick Daugherty's Motion to Dismiss and (B) Granting Highland Capital Management, L.P.'s Cross-Motion for Relief from a Final Order Pursuant to Bankruptcy Rule 9024" on September 5, 2025.[1] ROA.17, 953–55. Appellant timely appealed from that order on September 19. ROA.1–9; *see also* Fed. R. Bankr. P. 8002(a)(1) (stating that, generally, "a notice of appeal must be filed with the bankruptcy clerk within 14 days after the judgment, order, or decree being appealed is entered").

This Court has jurisdiction over this appeal under 28 U.S.C. § 158(a)(1). "A bankruptcy court's approval of a settlement order that

---

[1] The order states that it was signed on September 4, but it was not noted on the docket until September 5. *Compare* ROA.953, *with* ROA.17. "'The signing of an order by the judge does not constitute an 'entry' by the judge. The entry occurs when it is noted on the docket and thereby becomes public . . . .'" *Faragalla v. Access Receivable Mgmt.* (*In re Faragalla*), 422 F.3d 1208, 1210 (10th Cir. 2005) (quoting *United States v. Henry Bros. P'ship* (*In re Henry Bros. P'ship*), 214 B.R. 192, 195 (B.A.P. 8th Cir. 1997)).

brings an end to litigation between parties is a 'final' order" and "appealable as of right under 28 U.S.C. § 158." *Adam v. Itech Oil Co.* (*In re Gibraltar Res., Inc.*), 210 F.3d 573, 576 (5th Cir. 2000). A ruling on a motion for relief from a final order under Federal Rule of Bankruptcy of Civil Procedure 9024 is also appealable as a "separate final order." *See Banister v. Davis*, 590 U.S. 504, 520 (2020) (quoting *Stone v. INS*, 514 U.S. 386, 401 (1995)) (discussing Federal Rule of Civil Procedure 60(b), which is incorporated by Bankruptcy Rule 9024); *see also Browder v. Dir., Dep't of Corrs. of Ill.*, 434 U.S. 257, 263 n.7 (1978) ("A timely appeal may be taken . . . from a ruling on a Rule 60(b) motion.").

## ISSUE PRESENTED

1.    Did the bankruptcy court abuse its discretion by granting Appellee's cross-motion pursuant to Fed. R. Civ. P. 60(b)(6) when Appellee failed to make a showing of manifest injustice and exceptional circumstances required to rewrite a term of the parties' bargained-for, court-approved, settlement agreement that Appellee entered on a free, deliberate, calculated, and counseled basis?

## STATEMENT OF THE CASE

### I.    Highland's Bankruptcy

Appellee Highland Capital Management, L.P. (Highland) is a Dallas-based investment firm. ROA.1072. Faced with significant business litigation and multiple unpaid judgments, Highland filed for Chapter 11 bankruptcy on October 16, 2019, in the United States District Court for the District of Delaware. *See* ROA.739, 1075, 1088. The case was later transferred to this Court. ROA.739, 1088.

### II.    Daugherty's Claims

Appellant Patrick Daugherty, a former limited partner (as a profits-interest holder) and employee of Highland, filed a proof of claim in the bankruptcy case, which he superseded and replaced twice. ROA.721, 739, 801. In his latest proof of claim (No. 205), Daugherty asserted that he had a general, unsecured non-priority claim against Highland in the amount of $40,710,819.42. ROA.743.

Part of that claim arose out of losses that Highland had allocated to Daugherty for the 2008 tax year. *See* ROA.744. Due to the financial crisis, Highland lacked sufficient funds to pay Daugherty and other senior-level personnel the cash bonuses to which they were entitled. ROA.797–99. In lieu of those bonuses, Highland allocated a share of its losses to the

4

limited partners, which they could deduct from their other income, reduce their tax liability, and receive a refund. ROA.799. Highland estimated that Daugherty's refund would be $1,475,816 and promised that his other compensation would be "fairly adjusted" if his "actual refund deviate[d] materially from [the] estimate." ROA.731, 799.

Daugherty thought the tax refund scheme was fishy, so he secured an agreement that Highland would make him whole if the IRS disagreed with the tax treatment. *See* ROA.809. Highland then allocated approximately $4 million in losses to Daugherty, which he claimed on his return and received a refund of approximately $1.2 million. ROA.599, 724.

As Daugherty anticipated, the IRS questioned the tax treatment and notified him that it was auditing Highland's and his returns. ROA.599,724. Daugherty asserts that, if the audit ends in an adverse determination and a material deviation between his tax refund and Highland's estimate, he is entitled to the substitute compensation that Highland promised. ROA.724. He also asserts that Highland is required to reimburse him for any penalties and interest the IRS assesses (collectively, the Tax Refund Claim). *See* ROA.594, 781, 809.

## III.  Confirmation of the Plan

One month after Daugherty filed his third and final proof of claim, Highland filed its "Fifth Amended Plan of Reorganization of Highland Capital Management, L.P." (Plan). ROA.1001–66. The Plan creates four new entities: (1) the Reorganized Debtor (still named Highland); (2) its new general partner; (3) the Claimant Trust; and (4) the Litigation Sub-Trust. *See* ROA.1031. Under the Plan, the Claimant Trust is responsible for managing and monetizing assets of the estate, resolving claims, and "winding down the Reorganized Debtor's business operations." ROA.1011, 1033–34. The Claimant Trust also makes distributions of the net proceeds of the Claimant Trust's assets to holders of allowed unsecured and subordinated claims as trust beneficiaries. ROA.1033–34, 1050.

The Claimant Trust Agreement was a supplement to the Plan. ROA.1011, 1081; *see also* ROA1233–71. It requires the Claimant Trust to be dissolved no "later than three years from the Effective Date unless the Bankruptcy Court . . . determines that a fixed period extension (not to exceed two years, together with any prior extension) is necessary to

facilitate or complete the recovery on, and liquidation of, the Claimant Trust Assets." ROA.1266.

On February 22, 2021, the bankruptcy court issued its "Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (II) Granting Related Relief." ROA.739, 1067–227. The Plan's effective date was August 11, 2021, which means that the Claimant Trust must dissolve no later than August 11, 2026. *See* ROA.615, 739.

## IV. The Settlement Agreement

In November 2021, the newly reorganized Highland, the Claimant Trust, and Daugherty entered a Settlement Agreement. ROA.688–716. Under it, Daugherty received an allowed unsecured claim in the amount of $8.25 million, an allowed subordinated claim in the amount of $3.75 million, and a one-time payment of $750,000 in full satisfaction of all his claims against Highland—except the Tax-Refund Claim. ROA.693. Daugherty retained that claim, which the Settlement Agreement refers to as the "Reserved Claim," and Highland retained the right to assert any defense to it. ROA.698–99.

7

But the parties agreed that any litigation "concerning the validity and amount of the Reserved Claim shall be stayed until the IRS makes a final determination . . . " (Stay Provision). ROA.699. While Daugherty had the right to request that the bankruptcy court estimate the amount of the Reserved Claim, Highland did not. ROA.699.

The Settlement Agreement also stated that it "may not be modified other than by a signed writing executed by the Parties." ROA.702.

## V.    The Settlement Order

On December 8, 2021, Highland filed a "Motion for Entry of Order Approving Settlement with Patrick Hagaman Daugherty (Claim No. 205) and Authorizing Actions Consistent Therewith" ROA.722, 735–54. In that motion, Highland requested that the bankruptcy court approve the Settlement Agreement "as a rational exercise of [Highland's] business judgment made after due deliberation of the facts and circumstances concerning Daugherty's Claim." ROA.749. "[T]he Settlement Agreement was unquestionably negotiated at arms'-length" and its terms were "the result of numerous, ongoing discussions and negotiations between the parties and represent neither party's 'best case scenario.'" ROA.749. Highland further argued that the Settlement Agreement's approval was

8

in "the paramount interest of the creditors" because it enabled Highland to avoid "incurring substantial litigation costs" and the "risk associated with Daugherty's $40 million claim." ROA.749.

Following an evidentiary hearing, the bankruptcy court granted Highland's motion and entered an order approving the Settlement Agreement "in all respects" (Settlement Order). ROA.722, 1228–31. The Settlement Order stated that the Settlement Agreement was "fair, reasonable, and in the best interest of [Highland], its successor(s), and all parties in interest." ROA.1230–31.

## IV.   Highland's Motion for Relief from the Settlement Order

Notwithstanding the Settlement Agreement's Stay Provision, Highland filed an adversary proceeding against Daugherty on May 2, 2025. ROA.718–33. In that proceeding, Highland seeks to disallow Daugherty's Reserved Claim in its entirety. ROA.720. Alternatively, Highland requests that the bankruptcy court estimate the Reserved Claim—"after taking into account the likely outcome of the [IRS's audit], including adjustments that result therefrom"—under 11 U.S.C. § 502(c) and subordinate the Reserved Claim under 11 U.S.C. § 510(b). *See* ROA.720.

9

Daugherty moved to dismiss the adversary proceeding for failure to state a claim upon which relief can be granted under Federal Rule of Bankruptcy Procedure 7012.[2] ROA.580–92. In that motion, Daugherty argued that, under the Settlement Agreement's Stay Provision, a final IRS determination "is a dispositive condition precedent to [Highland's] right to commence and maintain any litigation concerning the amount or validity of Daugherty's Reserved Claim" and Highland's complaint did not—and could not—allege that "final determination has occurred." ROA.583.

In addition to responding to Daugherty's motion to dismiss, Highland filed a cross-motion for relief under Bankruptcy Rule 9024, which generally incorporates Federal Rule of Civil Procedure 60. ROA.606–18. It requested that the bankruptcy court modify the Settlement Order under Rule 60(b)(6) and strike the Stay Provision from the Settlement Agreement. ROA.614–15.

---

[2] Bankruptcy Rule 7012 incorporates Federal Rule of Civil Procedure 12(b)(6) in adversary proceedings. Fed. R. Bankr. P. 7012(b).

## V.  The Bankruptcy Court's Modification of the Settlement Order and Settlement Agreement.

The bankruptcy court held a hearing on Daugherty's motion to dismiss and Highland's cross-motion for relief on September 4. ROA.965–99. After hearing argument, the bankruptcy court announced that it would grant Highland's cross-motion due to "extraordinary circumstances." ROA.995–98. It stated that no one had "thought, reasonably thought, [Daugherty's Reserved Claim] would still be hanging out there with who knows what status four years later." ROA.998. And the court faced "a conflict of orders" because the "order approving [the Plan] approved, as part of that plan, a Claimant Trust Agreement, which had a finite duration." ROA.996.

The bankruptcy court also emphasized its desire to conclude Highland's case:

> But we can't wait forever. That's not what the Bankruptcy Code, the bankruptcy process, is designed to do. 502(c) is because of this sort of situation, where at some point you've got to estimate the claim if you can't get to a final determination otherwise. And I refuse to keep this estate open for who knows how many more years. Okay? I've made that very clear in other hearings, in other contexts, we need to wind this up.

ROA.998.

On September 5, the bankruptcy court entered its "Order (A) Denying Patrick Daugherty's Moton to Dismiss and (B) Granting Highland Capital Management L.P.'s Cross-Motion for Relief from a Final Order Pursuant to Bankruptcy Code 9024." ROA.953–55. It ordered that Highland's cross-motion was granted in its entirety and, "[p]ursuant to Bankruptcy Rule 9024(b)(6) [sic], the Settlement Order is hereby modified to provide that the Stay Provision is stricken from the Settlement Agreement." ROA.955.

On September 19, Daugherty appealed from that order to the extent it granted Highland's cross-motion. ROA.2.

## SUMMARY OF THE ARGUMENT

Reopening a final order is an extraordinary remedy and all the more so when that order approved a settlement agreement that was negotiated at arms' length by sophisticated parties represented by competent counsel. The parties are in the best position to evaluate the strengths and weaknesses of their claims and defenses, and their agreement represents their allocation of risk, which courts should be reluctant to second-guess.

12

Entering the Settlement Agreement, Daugherty faced the risk that the IRS would determine that he owed back taxes and assess substantial penalties and interest that has accrued since 2009. And those back taxes, penalties, and interest could dwarf the amount that Highland was willing to pay to settle the Reserved Claim. Attempting to reduce those risks and the uncertainty resulting from the IRS's audit, Daugherty bargained for and obtained an indefinite stay of any litigation of his Reserved Claim until the IRS made a final determination. By granting Highland's motion and striking the Stay Provision from the Settlement Agreement, the bankruptcy court redistributed the risk of loss between the parties in a manner that Daugherty would not have accepted.

Federal Rule of Civil Procedure 60(b)(6) did not permit the bankruptcy court to re-write the Settlement Agreement. The two grounds that Highland alleged—and the bankruptcy court found—for reopening the Settlement Order are "mistakes" that fall under Rule 60(b)(1), and the time for granting relief under that subsection has long passed. Even if Rule 60(b)(1) does not apply, Highland's failure to bargain for an end date in the Stay Provision is not an extraordinary circumstance required for relief under Rule 60(b)(6). It was a calculated, deliberate, and free

choice that, in hindsight, proved to be unwise. And any conflict between the Settlement Order, on the one hand, and the Plan and Claimant Trust Agreement, on the other, is hypothetical and must be resolved in favor of the Settlement Order. Therefore, the bankruptcy court abused its discretion by granting Highland's cross-motion, and this Court should reverse.

## STANDARD OF REVIEW

"When reviewing a bankruptcy court's decision in a 'core proceeding,' [this Court] functions as a[n] appellate court and applies the standard of review generally applied in federal court appeals." *First Nat'l Bank v. Crescent Elec. Supply Co.* (*In re Renaissance Hosp. Grand Prairie, Inc.*), 713 F.3d 285, 293 (5th Cir. 2013) (quoting *Webb v. Rsrv. Life Ins. Co.* (*In re Webb*), 954 F.2d 1102, 1103–04 (5th Cir. 1992)). "The decision to grant or deny relief under Rule 60(b) lies within the sound discretion of the [bankruptcy] court and will be reversed only for abuse of that discretion." *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 638 (5th Cir. 2005) (quoting *Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir. 1996) (en banc)). The bankruptcy court abuses it discretion when it "bases its decision on an erroneous view of the law or on a clearly erroneous

assessment of the evidence." *Id.* (quoting *Kennedy v. Tex. Utils.*, 179 F.3d 258, 265 (5th Cir. 1999)).

## ARGUMENT

The bankruptcy court abused its discretion by re-writing the Settlement Agreement, which was negotiated at arms' length by competent counsel and previously found to be fair and equitable.

## I. The "Sanctity of Settlements Can Hardly Be Overemphasized."

"Without a doubt, public policy favors settlement of claims brought before the courts. 'Settlement agreements have always been a favored means of resolving disputes. When fairly arrived at and properly entered into, they are generally viewed as binding, final, and as conclusive of rights as a judgment.'" *Ins. Concepts, Inc. v. W. Life Ins. Co.*, 639 F.2d 1108, 1111 (5th Cir. 1981) (quoting *Thomas v. Louisiana*, 534 F.2d 613, 615 (5th Cir. 1976)). That is especially true in bankruptcy, because "they minimize litigation costs and promote an efficient administration of the debtor's estate." *In re Johns*, 667 B.R. 322, 324 (N.D. Tex. 2025) (quoting *In re Idearc, Inc.*, 423 B.R. 138, 190 (Bankr. N.D. Tex. 2009)). Indeed, one bankruptcy judge described settlements and compromises as "[t]he glue that often holds the bankruptcy process together" and stated that "the

15

sanctity of settlements can hardly be overemphasized." Leif M. Clark, *Symposium Survey: Bankruptcy*, 28 Tex. Tech L. Rev. 299, 324 (1997).

Unlike most litigants, the debtor in bankruptcy must seek and obtain the bankruptcy court's approval of its settlement agreements before they become effective. *See* Fed. R. Bankr. P. 9019(a). The settlement agreement will be approved if it is "fair and equitable" in the "'informed, independent judgment' of the bankruptcy court." *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (quoting *Nat'l Sur. Co. v. Coriell*, 289 U.S. 426, 436 (1933)); *see also Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop, Inc.* (*In re Cajun Elec. Power Coop, Inc.*), 119 F.3d 349, 355 (5th Cir. 1997) ("Approval should be given only if the settlement is fair and equitable and in the best interest of the estate." (quotations omitted)).

A settlement agreement approved by the bankruptcy court has the same *res judicata* effect as a litigated judgment. *See Adam v. Itech Oil Co.* (*In re Gibraltar Res., Inc.*), 210 F.3d 573, 576 (5th Cir. 2000) (quoting *United States v. Kellogg* (*In re W. Tex. Mktg. Corp.*), 12 F.3d 497, 500 (5th Cir. 1994)). Such an agreement "'will rarely be set aside absent fraud,

16

collusion, mistake, or such other factors as would undo a contract.' As with a contract, a compromise is either accepted or rejected *in toto*." *United States v. Sterling Consulting Corp.* (*In re Indian Motorcycle Co.*), 289 B.R. 269, 282 (B.A.P. 1st Cir. 2003) (quoting *In re N. Broadway Funding Corp.*, 34 B.R. 620, 621–22 (Bankr. E.D.N.Y. 1983)); *Bradlees Stores, Inc. v. St. Paul Fire & Marine Ins. Co.* (*In re Bradlees Stores, Inc.*), 291 B.R. 307, 311 (S.D.N.Y. 2003).

## II.    Modifying the Settlement Order and Agreement Under Rule 60(b) Was an Abuse of Discretion.

Under Federal Rule of Civil Procedure 60(b),[3] the bankruptcy court may grant a party relief from a final judgment or order, such as one approving a settlement agreement, "in limited circumstances." *See BLOM Bank SAL v. Honickman*, 605 U.S. 204, 206 (2025); *see also In Gibraltar Res.*, 210 F.3d at 576 (holding that a "bankruptcy court's approval of a settlement order that brings an end to litigation is a 'final' order"). That rule "is an 'extraordinary' remedy; courts are disinclined to disturb final judgments except when necessary." *Rive v. Briggs of*

---

[3] Rule 60(b) applies in the bankruptcy court with certain modifications immaterial here. Fed. R. Bankr. P. 9024(a).

*Cancun, Inc.*, 82 F. App'x 359, 368 (5th Cir. 2003) (quoting *Goldstein v. MCI WorldCom*, 340 F.3d 238, 258 (5th Cir. 2003)).

Rule 60(b) contains six subsections, each setting out different grounds for relief. *See* Fed. R. Civ. P. 60(b). Under Rule 60(b)(1), the court may grant relief based on "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). Rules 60(b)(2) to 60(b)(5) contain other specific grounds, including newly discovered evidence, fraud, and the void or prospectively inequitable status of the order. Rule 60(b)(2)–(b)(5). And Rule 60(b) ends with "a catch-all provision—Rule 60(b)(6)—that allows a [bankruptcy] court to reopen a case for 'any other reason that justifies relief.'" *BLOM Bank*, 605 U.S. at 210 (quoting *Kemp v. United States*, 596 U.S. 528, 533 (2022)).

Here, Highland sought—and the bankruptcy court granted—relief under Rule 60(b)(6)'s catch-all provision for two reasons. ROA.955. First, neither the parties to the Settlement Agreement "nor [the bankruptcy court] nor any of Highland's stakeholders . . . foresaw in 2021 that Daugherty's Reserved Claim would remain unresolved in 2025." ROA.676–77 (footnote omitted). Second, "[a]n indefinite stay of the adjudication of Daugherty's Reserved Claim conflicts with the Plan and

18

the Claimant Trust [Agreement]." ROA.677. But neither is ground for relief under Rule 60(b).

### A. Highland's Motion Was Cognizable Under Rule 60(b)(1) and, Thus, Time-Barred.

First, what Highland has asserted are "mistakes" that fall under Rule 60(b)(1), not Rule 60(b)(6). "Rule 60(b)(6) provides only grounds for relief not already covered in the five preceding paragraphs. Were it otherwise, the catchall provision could be used to swallow the preceding paragraphs and 'be used to circumvent' their time bars" discussed below. *BLOM Bank*, 605 U.S. at 211 (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 n.11 (1988)). Consequently, the Supreme Court has "repeatedly held that relief under Rule 60(b)(6) is available 'only when Rules 60(b)(1) through (b)(5) are inapplicable.'" *Id.* (quoting *Kemp*, 596 U.S. at 533); *see also Klapprott v. United States*, 335 U.S. 601, 613 (1949) (holding that a party may "not avail himself of the broad 'any other reason' clause of 60(b)" if his motion was based on "neglect").

Rule 60(b)(1) is applicable here. As stated above, that subsection allows the bankruptcy court to grant relief from a judgment or final order based on "mistake, inadvertence, surprise, or excusable neglect." Fed. R.

19

Civ. P. 60(b)(1). "Mistake" has an expansive meaning, encompassing "any 'misconception,' 'misunderstanding,' or 'fault in opinion or judgment,'" regardless of whether the error was one of law or fact. *Kemp*, 596 U.S. at 534 (quoting *Webster's New International Dictionary* 1383 (1914)). And courts applying Rule 60(b)(1) have reopened judgments entered because of settlement agreements when a party has shown a mutual mistake. *See* 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2858 (Westlaw Sept. 2025 Update).

That is what Highland attempted to allege here.[4] In its cross-motion and at the hearing, Highland argued that neither the parties to the Settlement Agreement nor the Court "foresaw in 2021 that Daugherty's Reserved Claim would remain unresolved in 2025 . . . and would . . . serve as a barrier to Highland's commencement of the dissolution process and the ultimate conclusion of the Highland

---

[4] The lack of an IRS determination is not, in fact, a mutual mistake that would warrant setting aside the Settlement Agreement. "To establish a mutual mistake of fact, the plaintiff mut show by clear and convincing evidence that (1) both parties were mistaken as to a basic assumption, (2) the mistake materially affects the agreed-upon exchange of performance, and (3) *the party adversely affected did not assume the risk of mistake.*" *Lehman Bros. Holdings, Inc. v. Kee*, 268 A.3d 178, 191 n.95 (Del. 2021) (quoting *Hicks v. Sparks*, No. 522, 2013, 2014 WL 1233698, at *2 (Del. Mar. 25, 2014)) (emphasis added). Here, Highland assumed the risk that the IRS would not make a determination on Daugherty's Reserved Claim by agreeing to an open-ended stay of litigation.

Bankruptcy case." ROA.677; *see also* ROA.978 ("No one foresaw that this matter would be unresolved four years after the original agreement was signed . . . ."). But that incorrect prediction that the IRS would finish its audit and make a final determination before 2025 is nothing more than a "fault in opinion" and, hence, a "mistake" under Rule 60(b)(1). *See Kemp*, 596 U.S. at 534 (quoting *Webster's New International Dictionary* 1383 (1914); *see also Presidio Enters., Inc. v. Warner Bros. Distrib. Co.*, 784 F.2d 674, 679 (5th Cir. 1986) ("A prediction, or statement about the future, is essentially an expression of opinion." (footnote omitted)).

Rule 60(b)(1) also encompasses Highland's second ground for relief. If, as Highland argues, the Stay Provision "conflicts with the well-known terms of the Plan and Claimant Trust [Agreement]," then the bankruptcy court may have committed a legal error when approving the Settlement Agreement. *See* ROA.677; *see also In re Oakhurst Lodge, Inc.*, 582 B.R. 784, 796–97 (Bankr. E.D. Cal. 2018) (holding that "a post-confirmation settlement that materially changes the rights and duties of the debtor, creditor, or equity holders must be reviewed under § 1127(b)'s standards for plan modification"). But "a judge's errors of law are indeed 'mistakes' under Rule 60(b)(1)." *Kemp*, 596 U.S. at 530.

21

Highland, however, could not obtain any relief under Rule 60(b)(1) because its motion was untimely. All motions under Rule 60(b) must be filed "within a reasonable time," but "for some, including motions under Rule 60(b)(1), that 'reasonable time' may not exceed one year.[5]" *Id.* at 533 (quoting Fed. R. Civ. P. 60(c)(1)). And the bankruptcy court may not extend that one-year deadline. Fed. R. Bankr. P. 9006(b)(2) ("The court must not extend the time to act under Rule[] . . . 9024."); *see also* Fed. R. Civ. P. 6(b)(2) (same). Here, the bankruptcy court entered the Settlement Order on March 8, 2022. Over three years passed before Highland filed its motion for relief from that order on August 15, 2025. Accordingly, its motion was time-barred, and the bankruptcy court abused its discretion by granting it.

### B. Alternatively, Highland's Calculated and Deliberate Choices Are Not Extraordinary Circumstances Warranting Relief Under Rule 60(b)(6).

Assuming, *arguendo*, that Highland's motion was not cognizable under Rule 60(b)(1), granting relief under Rule 60(b)(6) was an abuse of discretion. The Supreme Court and the Fifth Circuit have held that only

---

5 Bankruptcy Rule 9024 modifies or removes this one-year deadline for certain orders, but not those approving a settlement under Bankruptcy Rule 9019. *See* Fed. R. Bankr. P. 9024(a)(1)–(3).

"extraordinary circumstances" will justify reopening a final judgment or order under Rule 60(b)(6). *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 211 (2025) (quoting *Kemp*, 596 U.S. at 533); *Ackermann v. United States*, 340 U.S. 193, 199 (1950); *Nat'l City Golf Fin. v. Scott*, 899 F.3d 412, 419 (5th Cir. 2018). It will not "relieve a party of the consequences of decisions deliberately made, although subsequent events reveal that such decisions were unwise." *Nat'l City Golf Fin.*, 899 F.3d at 418 (quoting *Fed.'s, Inc. v. Edmonton Inv. Co.*, 555 F.2d 577, 583 (6th Cir. 1977)); *see also Ackermann*, 340 U.S. at 198 (holding that a party "cannot be relieved" of his "calculated and deliberate" choice "because hindsight seems to indicate to him that his decision . . . was probably unwise").

In fact, the Supreme Court has "emphasized the importance of a Rule 60(b)(6) movant's faultlessness . . . ." *BLOM Bank*, 605 U.S. at 212 (citing *Ackermann*, 340 U.S. at 198)). Its "cases seem to make that fault/no fault distinction the controlling factor in determining whether extraordinary circumstances will be found. In a vast majority of the cases finding that extraordinary circumstances do exist so as to justify relief, *the movant was completely without fault for his or her predicament . . . .*"

23

12 James Wm. Moore et al., *Moore's Federal Practice* ¶ 60.48[3][b] (3d ed. 2025) (emphasis added).

Here, Highland is not without fault for its predicament. When it was negotiating the Settlement Agreement with Daugherty, Highland knew that the Claimant Trust Agreement required that the Claimant Trust be dissolved no later than August 11, 2026. The IRS is chronically understaffed and notoriously slow in processing and auditing tax returns. Highland should have known that there was a possibility, however slight, that the IRS would not reach a final determination on Daugherty's Reserved Claim within the next five years. And Highland's counsel had every incentive to ensure that his client was protected in the event that the IRS did not make a final determination before the Claimant Trust Agreement's deadline. But Highland agreed to an open-ended stay of the litigation anyway. That "free, calculated, and deliberate choice[] [is] not to be relieved from." *BLOM Bank*, 605 U.S. at 212 (quoting *Ackermann. v. United States*, 340 U.S. 193, 198 (1950)).

In addition, the purported conflict between the Settlement Order and the Plan and Claimant Trust Agreement does not qualify as an extraordinary circumstance. The conflict is hypothetical, because the IRS

24

may make a final determination of Daugherty's Reserved Claim by the August 11, 2026 deadline to dissolve the Claimant Trust. And, even if a conflict later exists, the bankruptcy court must resolve that conflict in favor of the Settlement Order. "[W]here there are two conflicting judgments, the last in point of time is the one that controls." *Garden Suburbs Golf & Country Club v. Murrell*, 180 F.2d 435, 436 (5th Cir. 1950) (per curiam) (quoting *Donald v. J.J. White Lumber Co.*, 68 F.2d 441, 442 (5th Cir. 1934)); *see also Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co.*, 121 F.3d 1332, 1335 (9th Cir. 1997) (same). Here, the bankruptcy court entered its order confirming the Plan and Claimant Trust Agreement on February 22, 2021, and entered the Settlement Order over a year later, on March 8, 2022. Consequently, the Settlement Order controls in the event of a conflict, and modifying it to strike the Stay Provision was an abuse of discretion.

## CONCLUSION

The bankruptcy court granted Highland relief under Rule 60(b) because it "refused to keep this estate open for who knows how many more years." ROA.997. Highland's bankruptcy case has been protracted, and the bankruptcy court's desire for resolution is understandable and

25

even commendable. "The need for expedition, however, is not a justification for abandonment of proper standards." *Protective Comm. of Indep. Stockholders of TMT Trailer Ferry, Inc.*, 390 U.S. 414, 450 (1968).

Because the bankruptcy court abandoned Rule 60(b)'s standards, this Court should reverse its order granting Highland's cross-motion for relief from the Settlement Order.

Respectfully submitted,

**Gray Reed & McGraw LLP**

By: */s/ William N. Drabble*
    Jason S. Brookner
    Texas Bar No. 24033684
    Andrew K. York
    Texas Bar No. 24051554
    William N. Drabble
    Texas Bar No. 24074154
    Joshua D. Smeltzer
    Texas Bar No. 24113859
    Drake M. Rayshell
    Texas Bar No. 24118507

1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile:  (214) 953-1332
Email:  jbrookner@grayreed.com
       dyork@grayreed.com
       wdrabble@grayreed.com
       jsmeltzer@grayreed.com
       drayshell@grayreed.com

*Attorneys for Appellant Patrick Daugherty*

## CERTIFICATE OF COMPLIANCE

In accordance with Federal Rule of Bankruptcy Procedure 8015(h), I certify that this brief complies with the type-volume limitation of Rule 8015(a)(7)(B)(i), because it contains 4368 words, excluding the parts of the brief exempted by Rule 8015(g). In determining the number of words, I have relied on the "word count" feature of Microsoft Office 365, which was used to prepare this brief.

*/s/ William N. Drabble*
William N. Drabble

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing brief was duly served on all counsel of record in accordance with Federal Rule of Civil Procedure 5(b)(2)(E) and Federal Rule of Bankruptcy Procedure 8011(c)(2)(A) by filing it with this Court's CM/ECF Electronic Notification System on this twenty-first day of November, 2025.

*/s/ William N. Drabble*
William N. Drabble