Case No. 3:25-cv-2584-E

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

In re: Highland Capital Management, L.P.,
      Reorganized Debtor.

Patrick Daugherty,

      Appellant,

v.

Highland Capital Management, L.P. and Highland Claimant Trust,

      Appellees.

Appeal from the United States Bankruptcy Court for the Northern
District of Texas, Dallas Division, Adv. Proc. No. 25-03055-sgj
Hon. Stacey G. C. Jernigan

## APPELLEES' BRIEF

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Jordan A. Kroop (AZ Bar No. 018825)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910

HAYWARD PLLC
Melissa S. Hayward
(Texas Bar No. 24044908)
Zachery Z. Annable
(Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100

*Counsel for Highland Capital Management, L.P., and the Highland Claimant Trust*

## CORPORATE DISCLOSURE STATEMENT

Appellee Highland Capital Management, L.P. is a Delaware limited partnership, the general partner of which is HCMLP GP LLC, a privately held Delaware limited liability company. Appellee Highland Claimant Trust is a Delaware statutory trust. No publicly held corporation owns 10% or more of the interests in any of these entities.

# TABLE OF CONTENTS

**Page**

ISSUE PRESENTED ...................................................................... 1

SUMMARY OF ARGUMENT ....................................................... 1

ARGUMENT .................................................................................. 4

    No One Made a "Mistake" ...................................................... 4

    The Stay Provision Unexpectedly Proved Incompatible with
        the Plan and Claimant Trust Agreement .............................. 9

    The Bankruptcy Court Did Not Abuse Its Discretion ................... 11

CONCLUSION ............................................................................. 14

# TABLE OF AUTHORITIES

**Page**

## CASES

*Garden Suburbs Golf & Country Club v. Murrell,* 180 F.2d 435 (5th Cir. 1950)...... 12

*Hesling v. CSX Transp., Inc.,* 396 F.3d 632 (5th Cir. 2005).................................... 11

*In re Durkalec,* 21 B.R. 618, 619–20 (Bankr. E.D. Pa. 1981) ..................................... 8

*In re Johnson & Morgan Contractors,* 29 B.R. 372 (Bankr. M.D. Pa. 1983) .............. 8

*Menier v. United States,* 405 F.2 245 (5th Cir. 1968) ................................................... 8

*Seven Elves v. Eskenazi,* 635 F.2d 396 (5th Cir. 1981)................................................. 8

*Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co.,* 121 F.3d 1332 (9th Cir. 1997) ........ 12

## STATUTES

Bankruptcy Code § 502(c)(1) ....................................................................... 10

## RULES

Bankruptcy Rule 8014(b).................................................................................. 1

Bankruptcy Rule 9024(a)(1) ............................................................................ 7

Federal Rule of Civil Procedure 60(b)(6) .......................................... passim

## OTHER AUTHORITIES

Judith Jarvis Thomson, *The Trolley Problem*, 94 YALE L.J. 1395 (1985)................. 12

iii

## ISSUE PRESENTED

Appellants Highland Capital Management, L.P. and the Highland Claimant Trust (together, "**Highland**") agree with Daugherty that the sole issue presented in this appeal is whether the bankruptcy court abused its discretion by granting Highland's cross-motion under Federal Rule of Civil Procedure 60(b)(6).[1] Highland disagrees with the additional arguments and characterizations in the Opening Brief's issue presented.[2]

## SUMMARY OF ARGUMENT

Under Highland's Plan of Reorganization, Highland and the Highland Claimant Trust must dissolve by August 11, 2026 (the "**Sunset Date**"). When it became clear that Daugherty was never going to concede that the IRS had made a "final determination" regarding his personal tax liability—at least not before the Sunset Date—it also became clear that the open-ended Stay Provision was incongruous with the Highland Plan's

---

[1] Unless otherwise obvious from the context, all references in this brief to "Rule" refer to the Federal Rules of Civil Procedure as incorporated into the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"). Capitalized terms used but not defined in this brief retain the definitions given to them in Daugherty's opening brief [Doc 18] ("**Opening Brief**").

[2] Under Bankruptcy Rule 8014(b), because Highland is generally satisfied with Daugherty's jurisdictional statement, applicable standard of appellate review, and statement of the case (save the occasional tendentious mischaracterization of the factual record), Highland declines to include those elements in this brief. Highland must point out, however, that: (a) it believes the IRS has made a "final determination"; (b) it disputes that Daugherty is "entitled to … substitute compensation" [Opening Brief at 5]; and (c) it disputes that it is required to reimburse Daugherty "for any penalties and interest the IRS assesses …" [*id.*].

requirements. To remedy that previously unforeseen circumstance, Highland sought relief from the Bankruptcy Court: a Rule 60(b)(6) remediation of the Stay Provision that had become, four years after its inclusion in the Settlement Agreement, unworkable and an impediment to the required dissolution by the Sunset Date.

The Stay Provision was no mistake. It made sense to include it in the Settlement Agreement four years ago. But no one foresaw then—not Highland, not Daugherty, not the Bankruptcy Court—that Daugherty's contingent Reserved Claim would remain unresolved four years later. The Stay Provision became an obstacle to concluding an extremely challenging Chapter 11 case. Assessing the facts before it and informed by a six-year history of presiding over Highland's reorganization case, the Bankruptcy Court found that an extraordinary, unforeseeable circumstance had arisen in which the Stay Provision and the Claimant Trust Agreement irreconcilably conflicted.

One had to yield to the other. Because the Bankruptcy Court determined that the Claimant Trust Agreement and the Plan required Highland and the Highland Claimant Trust to dissolve by the Sunset Date, the Stay Provision would have to yield in the interests of justice. Far from abusing its discretion, the Bankruptcy Court sensibly granted Highland's cross-motion for Rule 60(b)(6) relief to modify the Stay Provision. Doing so was not only well within the Bankruptcy Court's discretion but inflicted no harm on Daugherty. Relieving the parties from the Stay Provision simply requires Daugherty to defend his contingent proof of claim against Highland's objection sooner than he believed necessary. Daugherty was always going to have to do that eventually.

Rather than enforce an indefinite application of the Stay Provision and permit Daugherty to forestall Highland's dissolution indefinitely, the Bankruptcy Court exercised its discretion narrowly, carefully, and deliberately to accomplish two laudable goals: one, allow Highland and the Highland Claimant Trust to dissolve by the required Sunset Date; and, two, preserve Daugherty's ability to pursue allowance of his contingent Reserved Claim.

No other result could have done so much good so efficiently.

3

## ARGUMENT

For the following reasons, the Court should affirm the Bankruptcy Court's *Order (A) Denying Patrick Daugherty's Motion to Dismiss and (B) Granting Highland Capital Management L.P.'s Cross-Motion for Relief from a Final Order Pursuant to Bankruptcy Code 9024.*[3]

### No One Made a "Mistake"

Highland believes the IRS has made a "final determination" in the IRS Audit. Daugherty apparently believes that the "final determination" could be years away, only after Daugherty has exhausted all administrative and legal appeals. In fact, Daugherty supposes that the IRS may *never* make a "final determination,"[4] rendering the Stay Provision, as Daugherty characterizes it now, "indefinite."[5] Daugherty portrays the IRS, without evidence, as incapable of a timely "final determination," and then, again without evidence, ascribes "blame" to Highland for not sharing that dim assessment and not presciently anticipating it four years ago.

---

[3] ROA.953–55 (the "**Rule 60 Order**").
[4] ROA.583.
[5] Opening Brief at 13.

Daugherty never alleged any of this in the Bankruptcy Court. The Opening Brief is the first time he has made this argument. The Bankruptcy Court considered and relied on *real facts* rather than hindsight and supposition. That the IRS's final determination would not have been concluded in a manner satisfactory to Daugherty in four years was an unforeseen circumstance for which *all* parties are blameless. That includes Daugherty, who had his own incentive to have his fully reserved claim liquidated (and, if allowed, paid) sooner rather than later. He was just as capable of understanding the Sunset Date as Highland and the Bankruptcy Court. Daugherty cannot (and does not) dispute that he read the Plan and its exhibits, including the Claimant Trust Agreement, because he objected to the Plan and submitted a ballot voting on the Plan *months before entering into the Settlement Agreement.* Daugherty knew or should have known of the Sunset Date months before he negotiated the Settlement Agreement. If he had thought then (in 2020 and 2021) that the IRS was "chronically understaffed and notoriously slow" and, therefore, likely to delay a "final determination" for nearly half a decade, he, too, would have been mistaken in allowing the Stay Provision to be indefinite. After all, when he entered into the Settlement Agreement, Daugherty had as strong an interest in

prevailing on his Reserved Claim and receiving a distribution on account of that claim as he does today. Daugherty did not anticipate so protracted a process nor did Highland—or they would not have knowingly entered into agreements with what turned out to be conflicting provisions.

No one—not Highland, not Daugherty, not the Bankruptcy Court, and not Highland's unsecured creditors, all of whom had an opportunity to object to the Settlement Agreement, including the Stay Provision—made a "mistake" or a "choice" in November 2021 to set the Stay Provision and the Sunset Date on an inevitable collision course. No one foresaw that circumstances pertaining four years later would enable Daugherty to argue that a "final determination" had not been made (and may never be made), precluding Highland's objection to the Reserved Claim and delaying indefinitely the dissolution of Highland the Highland Claimant Trust.

Daugherty argues that Highland should have sought relief under Rule 60(b)(1) rather than Rule 60(b)(6) and attempts to recharacterize unforeseeable circumstances as a conscious "mistake" in order to squeeze this dispute into what Daugherty erroneously believes is a time-barred part of Rule 60. But those precise unforeseen circumstances are why Rule 60(b)(1) was inapt to address the matter—not because the passage of time

6

had made relief under that portion of Rule 60 unavailable[6] but because the circumstances here do not fit within the ambit of that rule or its reference to "mistake," the sole word Daugherty argues applies here. Daugherty cites cases discussing how courts will not relieve parties of the consequences of deliberate decisions. But Daugherty fails to identify what "decision" was "deliberately made." The Bankruptcy Court specifically found that no one, including the Bankruptcy Court, could have reasonably predicted this situation four years ago. That finding of fact, which Daugherty does not challenge in this appeal, was made after the Bankruptcy Court gave Daugherty every opportunity to present evidence that Highland had made some deliberate decision to allow the Stay Provision to conflict with the Claimant Trust Agreement and its Sunset Date. He failed to do so. There is no evidence in the record (or anywhere else) that anyone made a deliberate decision four years ago. Rule 60(b)(1) does not apply.

---

[6] Interestingly, even had Highland sought relief under Daugherty's preferred Rule 60(b)(1), Highland would *not* have been time-barred. Bankruptcy Rule 9024(a)(1) provides that "the one-year limitation in Fed. R. Civ. P. 60(c) does not apply to a motion to … reconsider an uncontested order allowing or disallowing a claim against the estate." The Settlement explicitly allowed two of Daugherty's claims totaling $12 million, which have been fully paid. ROA.693. The Settlement Order is precisely the type of order Bankruptcy Rule 9024(a)(1) exempts from Rule 60(c)'s one-year limitation.

Even if Daugherty were correct that Highland should have sought relief under Rule 60(b)(1)—he is not—he has cited no case and no rule that requires a party to seek relief on another arguably applicable rule or lose on the applicable rule that party *does* rely on. Neither has he cited any case that holds a bankruptcy court to have abused its discretion by granting relief under one rule rather than another arguably applicable rule. Highland is unaware of any case that stands for either of these propositions.

The cases that *do* apply recognize the vast difference between a mistake and an unforeseeable circumstance and sanction the use of Rule 60(b)(6), in the interests of equity and justice, to redress situations not susceptible of having been anticipated.[7]

---

[7] *See, e.g.*, *Seven Elves v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. 1981) ("Rule 60(b) is 'a grand reservoir of equitable power to do justice ….'") (quoting *Menier v. United States*, 405 F.2 245, 248 (5th Cir. 1968)). This is particularly true in bankruptcy courts, which have long been characterized as courts of equity and may exercise its discretion to vacate one of its prior orders "**very liberally**":

> [W]e must first confront the question concerning the power of this Court to vacate an Order which is res judicata. *In Re Burley,* 11 B.R. 369 (Bankr. C.D. California 1981) held that it is well established that the Bankruptcy Court as a court of equity, has the power to vacate an order or decree.
>> That power is inherent in the jurisdiction of the chancery and is explicitly defined in F.R. Civ. P. 60. The exercise of that power lies within the discretion of the trial court, guided by traditional principles of equity jurisprudence. In simple English, the language of the "other reason" clause (60(b)(6)) vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice.…
> In [a]ddition, not only does the Bankruptcy Court have the power to vacate a final judgment but also may exercise this power very liberally. The only criteria necessary is to "accomplish justice."

*In re Johnson & Morgan Contractors*, 29 B.R. 372, 374 (Bankr. M.D. Pa. 1983) (quoting *In re Durkalec,* 21 B.R. 618, 619–20 (Bankr. E.D. Pa. 1981)).

### The Stay Provision Unexpectedly Proved Incompatible with the Plan and Claimant Trust Agreement

That is what happened here. Circumstances played out in the preceding four years in a way no one expected, leaving the parties in the same position with respect to the contingent Reserved Claim as they were in when they executed the Settlement Agreement in 2021. No one anticipated that, by August 2025—only one year before the Sunset Date— the Reserved Claim would linger on as the last unresolved claim before the Bankruptcy Court.

Daugherty now argues that Highland should have anticipated this[8] and must, therefore, be blamed for "choosing" a Stay Provision that could conflict with a foreseeable future, yet he never applies the same scrutiny to himself. If Highland should have anticipated that the audit appeals process would take this long and that its failure to resolve would somehow preclude a "final determination" under the Stay Provision, then Daugherty should have as well. He did not. If he had, he would not have agreed to an open-ended stay, either. It would have been self-defeating for Daugherty to have

---

[8] Daugherty gratuitously goes even further by presuming to read Highland's mind, asserting that Highland actually made an "incorrect prediction" about how long the appeal of an IRS audit may take. Opening Brief at 21. It hardly bears noting that Daugherty has offered no evidence that Highland ever made any such prediction or that its guesses about the future motivated its agreement to the Stay Provision.

agreed to an open-ended Stay Provision in the face of the Sunset Date of which he was already aware. Doing so would have occasioned exactly the estimation proceeding under Bankruptcy Code § 502(c) the Bankruptcy Court will now undertake[9] so that it may be completed before the Sunset Date.

Failing to admit that he himself did not anticipate this eventuality while criticizing Highland for its own inability to predict the future makes Daugherty's arguments illogical. The truth is that no one anticipated the circumstances presented to the Bankruptcy Court in August 2025. When unforeseen circumstances became apparent, justice required the Bankruptcy Court to use Rule 60(b)(6) to strike the Stay Provision.

And Rule 60(b)(6) was the *only* provision of Rule 60 available to remedy this unforeseen circumstance. It is the only provision that would allow the Bankruptcy Court to heed Congress's intended purpose in Bankruptcy Code § 502(c) to prevent an unresolved claim from unduly delaying the administration of the bankruptcy estate (here, the dissolution of Highland and the Highland Claimant Trust).

---

[9] Bankruptcy Code § 502(c)(1) authorizes the Court to estimate for allowance purposes "any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, *would unduly delay administration of the estate.*" 11 U.S.C. § 502(c)(1) (emphasis added).

## The Bankruptcy Court Did Not Abuse Its Discretion

The Bankruptcy Court accurately recognized that applying Rule 60(b)(6) remains within its discretion.[10]

The Bankruptcy Court did not abuse that discretion in the least. First, Daugherty's initial argument—regarding the uncontroversial proposition that settlements are favored in bankruptcy matters—gets him nowhere. Daugherty supports his entire argument about the "sanctity of settlements" by characterizing what the bankruptcy court did as "re-writing the Settlement Agreement."[11] The Bankruptcy Court did not "re-write" anything. It simply revisited its own order approving the Settlement Agreement and dissolved the Stay Provision, which was only enforceable to the extent approved by the Bankruptcy Court in the first place. As the court empowered to interpret and even re-visit its own rulings, the Bankruptcy Court could revise its *order approving the settlement* if circumstances and justice required it.

Circumstances and justice required it. The Bankruptcy Court faced a dilemma: should it decline to revise its order approving the Settlement

---

[10] *See, e.g., Hesling v. CSX Transportation, Inc.*, 396 F.3d 632, 638 (5th Cir. 2005), a case accurately cited in Daugherty's Opening Brief.

[11] Opening Brief at 15.

Agreement, leaving resolution of the Reserved Claim dangling in suspended animation while preventing Highland from dissolving by the immutable Sunset Date; *or* should it narrowly re-tailor one provision of a lengthy Settlement Agreement to enable the Highland Claimant Trust to commence dissolution by the widely known Sunset Date while preserving Daugherty's ability to pursue his contingent Reserved Claim?

Daugherty argues extensively that the Bankruptcy Court should not have chosen the latter alternative without ever once suggesting what the Bankruptcy Court *should* or even *could* have done to resolve its dilemma.[12]

This was no Trolley Problem.[13] The far better choice was obvious, making this Court's job of assessing it an easy one. With no just alternative, the Bankruptcy Court chose the only reasonable path available: amend its Settlement Order to ensure that the Stay Provision would not impede the dissolution of Highland and the Highland Claimant Trust.

---

[12] Daugherty seems to argue [Opening Brief at 25] that the only way to resolve this conflict of orders is to allow the "last in point of time" to control, citing *Garden Suburbs Golf & Country Club v. Murrell*, 180 F.2d 435, 436 (5th Cir. 1950), and *Valley National Bank of Arizona v. A.E. Rouse & Co.*, 121 F.3d 1332, 1335 (9th Cir. 1997). Neither of those cases involved a motion for relief from a judgment under Rule 60. It is difficult to see how either case applies here. It is more difficult to see how Daugherty's solution to the conflicting orders is anything other than a caprice of convenience, unsupported by any citation to a relevant statute, rule, or case.

[13] The Trolley Problem poses a vexing choice: a runaway train whose conductor must choose to continue on the present track, running over one person, or to pull a lever and switch to a different track, running over several other people. *See, e.g.*, Judith Jarvis Thomson, *The Trolley Problem*, 94 YALE L.J. 1395 (1985).

It was a choice the Bankruptcy Court *had* to make. Allowing a conflict between the Stay Provision and the Sunset Date to fester and create additional chaos in the Chapter 11 case by not invoking Rule 60(b)(6)—*that* would have been an abuse of discretion, particularly where Daugherty had offered the Bankruptcy Court no alternative. Daugherty has never suggested what to do about the Sunset Date when the Plan prohibits any further extensions of it and when Daugherty remains steadfast in his belief that the IRS's "final determination" cannot occur until all avenues of appeal of the 2008 audit are exhausted, which may not occur before 2029 and may *never* occur.

Invoking Rule 60(b)(6) to harmonize the Settlement Agreement and the Claimant Trust Agreement is exactly what the Bankruptcy Court should have done. Far from reflecting an abuse of discretion, the Rule 60 Order epitomizes how a bankruptcy court justly and wisely exercises its discretion.

The Bankruptcy Court made the only choice it could make. It was manifestly the right one.

## CONCLUSION

This Court should recognize the propriety of the Rule 60 Order under the circumstances, acknowledge the Bankruptcy Court's sage application of its discretion, and affirm the Rule 60 Order.

December 22, 2025

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Jordan A. Kroop (AZ Bar No. 018825)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email:  jpomerantz@pszjlaw.com
            jmorris@pszjlaw.com
            gdemo@pszjlaw.com
            jkroop@pszjlaw.com

-and-

**HAYWARD PLLC**
*/s/ Zachery Z. Annable*
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email:  MHayward@HaywardFirm.com
            ZAnnable@HaywardFirm.com

*Counsel for Highland Capital Management, L.P.
and the Highland Claimant Trust*

14

## CERTIFICATE OF COMPLIANCE WITH RULE 8015

1.    This document complies with the type-volume limit of Fed. R. Bankr.
P. 8015(a)(7)(B)(i) because, according to Microsoft Word, it contains
2,978 words, excluding the portions of the brief exempted by Fed. R.
Bankr. P. 8015(g).

2.    This document complies with the typeface requirements of Fed. R.
Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R.
Bankr. P. 8015(a)(6) because this document has been prepared in a
proportionally spaced typeface (Century Schoolbook) in 14-point type
(12-point type for footnotes).

By: */s/ Zachery Z. Annable*
Zachery Z. Annable

## CERTIFICATE OF SERVICE

I certify that, on December 22, 2025, a copy of this document was served
electronically via the Court's CM/ECF system on all parties registered to
receive electronic notice in this case.

By: */s/ Zachery Z. Annable*
Zachery Z. Annable

15